12 CV 9113

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
........................................................x
ELIZABETH TAUB,                          )
individually and on behalf of            )
all others similarly situated,           )
                                         )
                    Plaintiff,           )        No.
                                         )
          · against ·                    )        CLASS ACTION
                                         )
WORLD FINANCIAL                          )        JURY DEMANDED
NETWORK BANK,                            )
                                         )
                    Defendant.           )
........................................................x
```

DEC 14 2012

## COMPLAINT

1.      This action seeks redress for the illegal practices of Defendant World Financial Network Bank (the "Bank"), for providing to customers of its J. Crew credit card accounts ("J. Crew Card") disclosure documents that violated the Truth in Lending Act ("TILA").

2.      As alleged in greater detail below, the Bank failed to furnish disclosures in the full and timely manner mandated by the federal regulations governing the opening of such credit card accounts. More specifically, the Bank failed to properly apprise J. Crew Card customers of all rights and responsibilities of the parties in the event of a billing error or dispute. TILA requires creditors to furnish complete account opening disclosures, including "billing rights" disclosures,

1

to a customer before the initial account transaction takes place, and the Bank failed to do so.

3.     TILA's purpose is to assure meaningful disclosure of credit terms in order to (i) allow consumers to compare more readily the various credit terms available; (ii) enable consumers to avoid the uninformed use of credit; and (iii) protect consumers against inaccurate and unfair billing practices. 15 U.S.C. § 1601(a). The Bank's conduct violates the express provisions of the TILA and the applicable Regulations.

4.     Under the private enforcement provisions of TILA, plaintiff and the proposed class seek the recovery of statutory damages of up to $1,000,000 with respect to each of the Bank's failures to comply.

*Jurisdiction and Venue*

5.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337, as well as under 15 U.S.C. § 1640(e), because this action arises under TILA, 15 U.S.C. § 1601 *et seq.*

6.     Venue is proper because the acts and transactions that give rise to this action occurred, in substantial part, in this district. Venue is also proper in this district because the Bank transacts business in this district and the interests of justice require maintenance of this action in this district.

*Parties*

7.     Plaintiff Elizabeth Taub resides in New York, New York, which is within this district.

8.      Taub is a "consumer," as that term is defined by § 1602(h) of TILA, because this complaint arises from the Bank's offer and extension of credit to Taub, a credit card holder, for personal, family or household purposes.

9.      Upon information and belief, the Bank is a corporation doing business in the State of New York and throughout the United States, with a charter in the State of Delaware and its principal operations in Columbus, Ohio.

10.      The Bank is a "creditor," as that term is defined by § 1602(f) of TILA and Regulation Z ("Regulation Z"), 12 C.F.R. § 226.2(a)(17) and 12 C.F.R. §1026.2(a)(17), because at all relevant times, the Bank, in the ordinary course of its business, regularly – *i.e.*, more than 25 times a year – extended or offered to extend consumer credit for which a finance charge is or may be imposed, which is payable in more than four installments.

*Factual Allegations*

11.      Taub is the holder of a J. Crew Card account issued by the Bank generally intended for the purchase of goods or services at J. Crew retail locations and the J. Crew website.

12.      The Bank furnished Taub an account-opening disclosure form on December 14, 2011, immediately before she purchased goods on that account. Exhibits A, B.

13.      All class members herein, as defined below, were furnished a J. Crew Card account-opening disclosure form substantially similar to the one attached as Exhibit A.

*Class Allegations*

14.     Taub brings this action individually and on behalf of all persons similarly situated.

15.     The proposed class (the "Class") consists of all persons who, according to the Bank's records, (i) were furnished, in connection with the opening of a new J. Crew Card account, an account-opening disclosure form with the code "JC-APCCA-0811W" or a differently coded account-opening disclosure form with a billing rights notice containing substantially the same text as that in the billing rights notice in Exhibit A, and (ii) made an initial purchase on the J. Crew Card account or after December 14, 2011.

16.     Specifically excluded from this class are the Bank, any entity in which the Bank has a controlling interest, and the officers, directors, affiliates, legal representatives, heirs, successors, subsidiaries or assigns of any such individual or entity.

17.     The members of the class for whose benefit this action is brought is so numerous that joinder of all Class members is not practicable. In light of the tens of thousands of credit cards issued by the Bank every year, the number of class members is believed to be in excess of 1,000 persons.

18.     Taub's claims are typical of, if not identical to, all members of the class and Taub does not have any interest that is adverse or antagonistic to the interests of the class. If the conduct of the Bank violates TILA as applied to Taub, then it violates TILA with respect to the Class.

4

19.     Taub will fairly and adequately protect the interests of the Class as she is committed to the vigorous prosecution of this action and, to that end, has retained competent counsel experienced in complex litigation of this nature.

20.     The Class is proper for certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure. The Defendant's actions complained of herein are generally applicable to all Class members, thereby making final injunctive relief appropriate with respect to the class as a whole.

21.     The class is also proper for certification under Federal Rule of Civil Procedure 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted herein. Because damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it impracticable for the class to seek redress individually for the wrongs they have suffered. Members of the Class do not have a particular interest in individually controlling the prosecution of separate actions.

22.     There are questions of law and fact which are common to the members of the Class and which predominate over questions affecting only individual members. Common questions of law and fact include, but are not limited to, whether the Bank has a standardized procedure by which it fails to make a disclosure of a credit customer's billing rights in a way that is compliant with TILA and Regulation Z.

23.     Upon information and belief, the Class consists of thousands of customers.

5

24.     Thus, a class action is an appropriate and superior method for the fair and efficient adjudication of the present controversy given the following factors:

a)  Common questions of law and/or fact predominate over any individual questions which may arise and, accordingly, there would accrue enormous savings to both the Court and the Class in litigating the common issues on a class-wide instead of a repetitive individual basis; and

b)  The aggregate volume of the individual class members' claims, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost-effective basis, especially when compared with repetitive individual litigation.

25.     Class certification is also fair and efficient because prosecution of separate actions by individual Class members would create a risk of differing adjudications with respect to such individual members of the Class, which as a practical matter may be dispositive of the interests of other members not parties to the adjudication, or substantially impede their ability to protect their interests. Moreover, since the actual monetary damages suffered by, or statutory damages available to, individual Class members may be relatively small, although significant in the aggregate, the expenses and burdens of individual litigation make it impossible or effectively impossible for the members of the Class to seek individual redress for the TILA violations committed by Defendant.

26.     Plaintiff anticipates that there will be no difficulty in the management of this litigation. The records of the individuals encompassed within the Class are in Defendant's possession.

COUNT I

*Violations of the Truth in Lending Act*

27. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

28. Congress originally authorized the Federal Reserve Board ("FRB" or "Board") to promulgate regulations granting it broad authority to effectuate the purposes of TILA; that authority is now delegated to the Bureau of Consumer Financial Protection ("Bureau"). 15 U.S.C. § 1604(a0(2008); 15 U.S.C. § 1604(a).

29. The set of regulations that the FRB promulgated to implement TILA is known as Regulation Z. 12 C.F.R. §226.1 *et seq.*

30.     To reflect its assumption of TILA rulemaking authority as of July 21, 2011, the Bureau issued an interim final rule republishing Regulation Z with only minor changes that did not impose any new substantive obligations on creditors. 76 FR 79768 (Dec. 22, 2011); 12 C.F.R. §1026.1 *et seq.*

30. TILA requires a creditor to disclose to a customer who is opening a new account, before the first transaction on the account is made, certain rights and responsibilities applicable to each party with respect to billing disputes "in a form prescribed by regulations of the Bureau." 15 U.S.C. § 1637(a)(7).

31. Accordingly, the Bureau prescribed – as did its predecessor, the Board – that creditors furnish each customer who is opening a new account a statement of billing rights "substantially similar" to that which appears in Model

7

Form G-3(A) of Appendix G to Regulation Z ("Model Billing Rights Form"). 12

C.F.R. §226.6(b)(5)(ii), 12 C.F.R. §1026.6(b)(5)(ii).

32. The billing rights notice ("BRN") Defendant furnished Taub, as

seen in Exhibit A, is not substantially similar to the Model Billing Rights Form,

reproduced as Exhibit C, in language or substance.

33. The BRN omitted a warning to consumers who would initiate

billing-error correspondence to contact the creditor "[a]t least 3 business days

before an automated payment is scheduled, if you want to stop payment on the

amount you think is wrong." 12 C.F.R. 226 Appendix G, Model Form G-3(A); 12

C.F.R. 1026 Appendix G, Model Form G-3(A).

34. The BRN also omitted the creditor's responsibility, within 30 days

of receiving a consumer's billing-error correspondence, to inform the consumer that

it indeed received such correspondence, irrespective of whether the purported error

had or had not already been corrected by then.

35. The BRN also omitted the preconditions governing the consumer's

limited right not to pay for a purchase of goods or services when she is dissatisfied

with that purchase: more specifically, it failed to specifically disclose that in order

for the consumer to exercise this right, the credit card itself, rather than cash

advances or checks from the card account, must have been directly used for the

purchase and the purchase must not have already been fully paid for.

36. The BRN also omitted the consumer's responsibility to contact the

creditor in writing (or electronically) when she is dissatisfied with a purchase of

goods or services in order to exercise that right not to pay the remaining amount due on the purchase.

37. The BRN also employed language throughout the notice that was dissimilar to the language contained in the Model Billing Rights Form.

38. With respect to each of the Bank's violations of TILA, as alleged above, Plaintiff and the Class are entitled to recover up to $1,000,000 in statutory damages, together with costs and reasonable attorney fees. 15 U.S.C. § 1640(a)(2).

WHEREFORE, Plaintiff Elizabeth Taub prays on her behalf and on behalf of the Class that judgment be entered against Defendant as follows:

(1)   An order certifying the proposed Class under Federal Rule of Civil Procedure 23(b)(2) and, additionally or in the alternative, an order certifying the Class under Federal Rule of Civil Procedure 23(b)(3);

(2)   A declaration that the Bank's systematic and standard policy of furnishing nonconforming billing rights notices in account-opening disclosure statements violates the Truth in Lending Act;

(3)   An injunction permanently prohibiting the Bank from engaging in the conduct described;

(4)   Maximum statutory damages as provided under 15 U.S.C. § 1640(a)(2);

(5)   Attorney fees, litigation expenses, and costs; and

(6)   Such other and further relief as to this Court may seem just and proper.

*Jury Demand*

Plaintiff respectfully requests a trial by jury.


Dated:  New York, New York
        December 14, 2012

                                    Respectfully Submitted,

                            By:     _____
                                    Brian L. Bromberg
                                    One of Plaintiff's Attorneys

<u>Attorneys for Plaintiff</u>

Brian L. Bromberg
Michael N. Litrownik
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
(212) 248-7906

Harley J. Schnall
Law Office of Harley J. Schnall
711 West End Avenue
New York, NY 10025
(212) 678-6546

# Exhibit A

CREDIT CARD
AGREEMENT

| Interest Rates and Interest Charges | |
|---|---|
| Annual Percentage Rate (APR) for Purchases | **24.99%.** This APR will vary with the market based on the Prime Rate. |
| Paying Interest | Your due date is 25 days after the close of each billing cycle. We will not charge you interest on purchases if you pay your entire balance by the due date each month. |
| Minimum Interest Charge | If you are charged interest, the charge will be no less than $1.00. |
| For Credit Card Tips from the Federal Reserve Board | To learn more about factors to consider when applying for or using a credit card, visit the website of the Federal Reserve Board at **http://www.federalreserve.gov/creditcard.** |

| Fees | |
|---|---|
| Set up and Maintenance Fees | |
| • Annual Fee | None |
| **Penalty Fees** | |
| • Late Payment | Up to **$35** |
| • Returned Payment | Up to **$25** |

**How We Will Calculate Your Balance:** We use a method called "average daily balance (including new purchase)."

**Billing Rights:** Information on your rights to dispute transactions and how to exercise those rights is provided in your account agreement.

The information about the costs of the credit card account described above is accurate as of July 1, 2011. This information may have changed after that date. To find out what may have changed and for the current APR, please see the cardmailer with your new credit card or visit our website at www.mycardcare.com/jcrew.

**CREDIT CARD AGREEMENT**
This is your Agreement with World Financial Network Bank for customers of J.Crew. It covers the use of your credit card account with us. This Agreement may include information about promotional Credit Plans. Any information about such Plans will be included in the form of an insert, attachment, or other written information provided as part of or with this Agreement. Please read this Agreement and keep it for your records.
THIS AGREEMENT INCLUDES A JURY TRIAL WAIVER IN PARAGRAPH 30.A. AND AN ARBITRATION PROVISION IN PARAGRAPH 30.C. IN THE EVENT OF A DISPUTE BETWEEN YOU AND US: (1) THE JURY TRIAL WAIVER WILL ELIMINATE THE RIGHT TO A TRIAL BY JURY; AND (2) UNLESS YOU ACT PROMPTLY TO REJECT IT, THE ARBITRATION PROVISION WILL SUBSTANTIALLY AFFECT YOUR RIGHTS, INCLUDING YOUR RIGHT TO BRING, JOIN IN OR PARTICIPATE IN CLASS PROCEEDINGS.
**1. Definitions.** In this Agreement, "We", "Us," and "Our" mean World Financial Network Bank. "You" and "Your" mean each person who signs an application for, or otherwise requests, a credit card account with us. "Account" means your credit card account with us. "Card" means each credit card we issue to you for your Account. "Credit Plan" means one or more payment program options that J.Crew may ask us to offer from time to time. You agree that at any time for any reason we may reissue a Card to you and/or may ask you to return any or all Cards.
**2. Your Promise to Us.**
**A.** You agree to the terms of this Agreement. You promise to do everything this Agreement requires of you. You will be legally bound by this Agreement if you sign an application to obtain credit from us, or if you sign a charge slip, or if you use or permit someone else to use the credit provided.
**B.** If the Account is a joint Account, you and the joint Account holder each will be bound by this Agreement and each of you will be jointly and individually responsible for repaying all amounts due under this Agreement.
**C.** Any authorized user of your Account will, by such use of the Account, be bound by the terms of this Agreement. If you want to cancel the authorized or permitted use of your Account by another person, you may either write us at the address or call us at the telephone number shown on your Statement. You must obtain, cut in half and return the Card in such authorized users possession to us. You understand and agree that we will be unable to determine whether any particular transaction on your Account has been conducted by you, your joint Account holder or the authorized user or if the transaction by the authorized user was indeed authorized by you or made for your benefit. You agree to pay for all transactions made on your Account by an authorized user whether or not such transactions were in fact duly authorized by you or made for your benefit.
**D.** If you fail to comply with any of the terms of this Agreement, we may declare all amounts you owe to be immediately due and payable, prohibit further transactions on your Account, cancel the Cards, and revoke any privileges associated with the Card or your Account.
**3. Sign the Card.** For your own protection, please sign the Card before using it. Your signature on the Card is not a prerequisite to your obligation to pay amounts incurred on your Account.
**4. Method of Payment.** You may pay your Account by sending your personal check, payable in U.S. dollars, to the name and address

shown on your Statement. Payments are considered received when posted to your Account in the state in which the WFNNB main office is located. You must include your payment stub. Do not send cash. If any payment does not conform to these requirements, the payment may not be credited to your Account for up to five days, or may be rejected. Any check marked "payment in full" or with similar terms must be sent to a separate address specified on your Statement. We can accept such checks or late or partial payments without losing our right to receive the full amount owing on your Account.

**5. Lost or Stolen Card.** If a Card is lost or stolen, you must tell us at once. You must also tell us at once if you think someone used a Card without your permission. You may either write us a letter or call us at the address and phone number shown on your Statement. Until you do, you may have to pay (up to $50.00) for purchases made by anyone who used the Card without your permission.

**6. Credit Plans.** Your Account may consist of a non-promotional Credit Plan and one or more promotional Credit Plans. We may offer different promotional Credit Plans from time to time. If a promotional Credit Plan is offered at the time you open your account, this Agreement will include information about the terms for the Plan (which may include the Daily Periodic Rate, the ANNUAL PERCENTAGE RATE, and/or the minimum payment amount), by use of an insert, attachment, or other written information provided as part of or with this Agreement. Normal late payment charges, returned check charges and all other provisions apply to any promotional Credit Plan unless inconsistent with a particular Credit Plan offering. The promotional Credit Plan period will end and the promotional Credit Plan balance will be transferred to your non-promotional Regular Revolving balance if the promotional Credit Plan purchase is not paid in full before the promotional period ends.

The types of Credit Plans offered and the particular features (including but not limited to minimum purchase requirements, Minimum Payment, etc.) of such Credit Plans may vary from time to time at our discretion and may include one or more of the following: Regular Revolving or Promotional Credit Plans. The Regular Revolving Credit Plans are your non-promotional purchases using the Card. The Promotional Credit Plans may include: Waive Interest, Payment Required; Waive Interest, Equal Payment; Waive Interest, Low Payment; Defer Interest, Equal Payment; Defer Interest, Payment Required; Defer Interest, Low Payment. (Please see section 14 for explanation for how Finance Charges are calculated for each Plan.)

**7. Skip-Payment Option.** At our sole option, we may allow you to skip making the Minimum Payment on certain Billing Periods. During the skip-payment period Finance Charges will be assessed but no late fee will be imposed. At the end of the skip-payment period, all terms of this Agreement that would have applied, were it not for the skip-payment feature, will automatically resume without notice.

**8. Credit Limit.** Your Credit Limit is the total maximum amount we allow you to owe us at any time. You may not exceed any credit limit that we set for your Account. If you do use the Account for more than your Credit Limit, we can still charge you for all purchases, Finance Charges and other charges without giving up any of our rights under this Agreement. We may change your Credit Limit at any time.

**9. How to Cancel Your Account.** You may cancel your Account at any time. Cut each Card in half and send us the pieces with a letter telling us you want to cancel your Account. This includes each Card you gave to others. You still must pay the full amount you owe us.

**10. We Have the Right to Cancel Your Account.** We may cancel your Account at any time for any reason. We also may cancel any of the Credit Plans at any time for any reason. Any Card issued for your Account must be cut in half and the pieces sent to us if we ask. This includes each Card you gave to others. You cannot use a Card after we ask you to return it. You still must pay the full amount you owe us and comply with the terms of this Agreement.

**11. Payments; Minimum Payment.** You may pay all of your Account balance at any time without penalty. You must pay us at least the Minimum Payment Due for each Billing Period by the Payment Due Date shown on your Statement. The Minimum Payment will be the total of the minimum payments for the Regular Revolving and Promotional Credit Plans (as described in Section 6 of your Credit Card Agreement), plus any past due amounts. The minimum payments for the Regular Revolving Credit Plan and Promotional Credit Plans (except for Waive Interest, Equal Payment; Defer Interest, Equal Payment; Waive Interest, Low Payment and Defer Interest, Low Payment) will be the greater of: (a) $5.00 or (b) 5.0% (rounded up to the nearest dollar) of the New Balance shown on your Statement for that Credit Plan. The minimum payment for the Waive Interest, Equal Payment and Defer Interest, Equal Payment Credit Plans will be the amount of the purchase divided by the number of months between the date of the purchase and promotional period end date (minimum $5.00) rounded up to the nearest whole dollar. The minimum payment for the Waive Interest, Low Payment and Defer Interest, Low Payment will be the greater of: (a) $5.00 or (b) 1% (rounded up to the nearest dollar) of the New Balance shown on your Statement for that Credit Plan. However, the total minimum payment due on your account will not be less than $25.00. If your Account balance is less than $25.00, you must pay your Account balance in full. Your Statement will tell you how much your Minimum Payment must be.

**12. Application of Payments.** We reserve the right to apply payments equal to or less than the required minimum amount in a manner of our choosing, which may result in balances subject to lower interest rates being paid prior to other balances. This may result in higher interest charges. Any payment you make in excess of the required Minimum Payment Due will be allocated to your Account as required by applicable law. However, excess payments received before a deferred interest promotion expires are applied to the deferred interest promotional balance first in the last two billing cycles of the promotional period.

**13. Statements; Billing Periods.** If your Account has a balance, we will send you a Statement at the end of each Billing Period. We send only one Statement for your Account. The Statement will show your: Statement Closing Date, Previous Balance, Payments and Credits, Charges, Finance Charge, Payment Due Date, New Balance and Minimum Payment. Billing Period means the days between the closing date shown on the last Statement we sent you and the closing date on your current Statement. We may change your Billing Period as permitted by law at any time for our own convenience.

**14. Finance Charges.**
**A.** If you make a purchase under a Regular Revolving Credit Plan, no Finance Charges will be imposed in any Billing Period in which (i) there is no Previous Balance or (ii) payments received and credits issued by the Payment Due Date, which is 25 days after the Statement Closing Date shown on your last Statement, equal or exceed the Previous Balance. If the New Balance shown on your last Statement

is not satisfied in full by the Payment Due Date shown on your last Statement, there will be a Finance Charge on each purchase from the date of purchase.

B. If you make a purchase under any of the following Promotional Credit Plans: Waive Interest, Payment Required; Waive Interest, Equal Payment and Waive Interest, Low Payment, we will not charge Finance Charges on the purchase if you pay the total amount of the purchase before the end of the promotional period. If you do not pay the total amount of the purchase before the end of the promotional period, we will add the amount of the purchase to your Regular Revolving balance and will begin to charge Finance Charges on the purchase from the first day after the promotional period ends. For any Waive Interest Plan that ends, we will add the remaining amount of the plan to your Regular Revolving balance and will begin to charge Finance Charges. If you make a purchase under a Defer Interest, Payment Required; Defer Interest, Equal Payment; or Defer Interest, Low Payment Credit Plan, we will add the amount of Finance Charges that have accrued from the date of purchase through and including the last day of the promotional period to your Regular Revolving balance if you do not pay the total amount of the purchase before the end of the promotional period. For any Defer Interest Plan that ends, we will add the remaining amount of the plan and the amount of Finance Charges that have accrued from the date of purchase through and including the last day of the promotional period to your Regular Revolving balance.

C. We figure Finance Charges on your Account separately for each Credit Plan. For each Billing Period, we use a "Daily Balance" to figure Finance Charges on your Account. This is how we figure the "Daily Balance" each day.

1. We start with the beginning balance on your Account each day (including unpaid Finance Charges and fees).

2. We subtract any payments or credit adjustments and add any new purchases and debit adjustments posted as of that day. This gives us the "Partial Daily Balance" for the day.

3. We then multiply the Partial Daily Balance for the day by the Daily Periodic Rate of Finance Charge to obtain the "Daily Finance Charge" for the day and add it to the day's Partial Daily Balance. This gives us the "Daily Balance", which will be the beginning balance for the following day.

At the end of each Billing Period, we add together each Credit Plan's Daily Finance Charge for each day in the Billing Period to get the total Account Finance Charge for the Billing Period.

Your Statement will show an Average Daily Balance, which is the sum of the Partial Daily Balance for each day in the Billing Period divided by the number of days in the Billing Period.

D. The Daily Periodic Rate of **FINANCE CHARGE** applicable to your Account will be computed by adding 21.74% to the value of an "Index," and dividing by 365 (The corresponding ANNUAL **PERCENTAGE RATE** will be the Index plus 21.74%). The Index in effect for each Billing Period shall be the highest "Prime Rate" of interest as published in the "Money Rates" section of *The Wall Street Journal* for the calendar month preceding the month in which the Billing Period begins, rounded upward, if necessary, to the nearest .001% ("Index"). An increase or decrease in the Annual Percentage Rate will result in a corresponding increase or decrease in the amount of Finance Charge and may increase the amount of your minimum payment due.

E. We will charge you a minimum **FINANCE CHARGE** of **$1.00** per credit plan for any Billing Period in which a Finance Charge is due.

F. Your monthly statement will disclose the applicable Annual Percentage Rate for the Billing Period. If this Agreement accompanies credit cards for your new account, the current initial Daily Periodic Rate of **FINANCE CHARGE** and corresponding **ANNUAL PERCENTAGE RATE** are indicated on the Cardmailer and are incorporated herein by reference. As of July 1, 2011, the initial Daily Periodic Rate of **FINANCE CHARGE**, was **0.06846%**, and the corresponding initial **ANNUAL PERCENTAGE RATE** was **24.99%**. This information may have changed after that date. To find out about changes in the information, call us at 1-888-428-8810 (TDD/TTY 1-800-695-1788) or write us at World Financial Network Bank, PO Box 182273, Columbus, OH 43218-2273.

**15. Other Fees and Charges.** You agree to pay (as interest) the following fees and charges:

**A. Late Fee.** We can charge you a late fee of up to $35.00, as allowed by law, if you do not pay us at least the Minimum Payment Due for each Billing Period or if we receive your payment after the Payment Due Date shown on your Billing Statement.

**B. Returned Check Fee.** We can charge you up to $25.00 for each check your bank returns to us for any reason. Although we may, we do not have to attempt to collect any check more than once.

**C. Document Fee.** If a copy of any Statement, sales draft or similar document is provided by us at your request (except in connection with billing error inquiries or resolution), we may charge the Account the following fee(s):

- Statement copy - $6.00
- Sales/Credit Draft copy - $6.00
- Check/Money Order copy - $6.00

**D. Alternative Payment Method Fee.** We may offer alternative payment methods which would allow you to make individual, expedited payments to your Account over the telephone or through the internet. If you choose to use one of those payment methods, then we may assess the then current fee that we charge for this service. At present, that fee is up to $15.00, but it may change. We will disclose the current fee to you (you may withdraw your request if you do not want to pay the fee) before you authorize any payment(s) through either of these alternative methods.

**16. Immediate Payment.** We may tell you to pay the full amount you owe at once if you do not pay at least the Minimum Payment each time you receive a Statement. We will tell you in advance and/or give you an opportunity to cure your default only if applicable law requires us to do so.

**17. Attorney Fees and Collection Costs.** As permitted under applicable law, you agree to pay the reasonable costs for collecting amounts due, including reasonable attorney's fees and court costs by us or by another person or entity.

**18. Changes.** We may add, change or delete the terms of your Account (including, but not limited to, Annual Percentage Rate and other significant changes). If notice is required, it will be mailed to you at least forty-five (45) days prior to the effective date of the change. Notice may also include a statement of your right to cancel the account prior to the effective date of the change.

**19. Security Interest.** You grant us a security interest in all goods that you purchase through the use of the Account now or at any time in the future and in all accessions to and proceeds of such goods. We hereby waive any security interest we may have in your principal dwelling to the extent that it would otherwise secure any obligation

arising hereunder.

**20. Governing Law.** THIS AGREEMENT IS GOVERNED BY DELAWARE AND APPLICABLE FEDERAL LAW. THIS IS THE LAW WE ARE SPEAKING OF WHEN WE REFER TO A TERM PERMITTED OR REQUIRED BY APPLICABLE LAW.

**21. Transfer of Rights Assignment.** Your rights under this Agreement cannot be transferred by you, by operation of law, or otherwise, but your obligations shall be binding upon your estate or personal representatives. We may transfer or assign your Account and/or this Agreement, or any of our rights under this Agreement, to another person or entity at any time without prior notice to you or your consent.

**22. No Waiver of Rights.** We can delay enforcing our rights under this Agreement without losing them.

**23. Severability.** If any provision of this Agreement is in conflict with applicable law, that provision will be considered to be modified to conform with applicable law.

**24. Credit Reports.** You hereby authorize us to investigate your credit record. You agree that a credit report may be requested in connection with the processing of an application for credit, and subsequently in connection with any extension of credit, or any request to increase your credit limit, or any renewal or update of your Account, or to take collection action on the Account, or to investigate disputes regarding the Account. If you ask, we will tell you if credit reports were requested, and the name and address of any credit bureaus that provided the reports. You understand that we may report negative information about your account to the credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. You hereby authorize us to furnish information concerning your Account to credit bureaus and other creditors, as well as to the retailer whose name appears on your Card.

**Credit Report Disputes.** If you believe the Account information we reported to a consumer reporting agency is inaccurate, you may write to us at the address provided on the credit report from the consumer reporting agency. Your written dispute must provide sufficient information to locate the account and why you believe the information is inaccurate. If available, provide a copy of the section of the credit report showing the account information you are disputing.

**25. Credit Insurance (as applicable).** Credit insurance is not required. If you have been accepted for credit insurance coverage, the premium charge will be added to your Account as a purchase on the last day of each Billing Period.

**26. Debt Cancellation (as applicable).** Your Purchase of Account Assure is optional. Whether or not you purchase Account Assure will not affect your application for credit or the terms of any existing credit agreement you have with World Financial Network Bank. The monthly fee for Account Assure is based on the outstanding monthly balance on your account each month and will be added to your account statement. We will give you additional information before you are required to pay for Account Assure. This information will include a copy of the contract containing the terms and conditions governing Account Assure. There are eligibility requirements, conditions, and exclusions that could prevent you from receiving benefits under Account Assure. You should carefully read the contract for a full explanation of the terms of Account Assure.

**27. Communication Regarding Account.** Until your account is finally settled, you give direct consent to receive communications regarding your account to us, any servicers and any collectors of your account,

through various means such as 1) any cell, landline, or text number that you provide, 2) any email address that you provide, 3) auto dialer systems, 4) recorded messages, and other forms of communications. Further, you agree that any such communications are not unsolicited for purposes of any state or federal law.

**28. Telephone Monitoring.** As part of our continuing effort to maintain a high quality of service to our customers, telephone communications with you may be monitored and recorded. You agree that monitoring and/or recording may be done and that no additional notice to you or additional approval from you is needed. Please inform all persons authorized to use this account, those acting on your behalf, or anyone making payments on this account, of this provision.

**29. Customer Changes.** You must tell us at once if you change your name, address or employment.

**30. Dispute Resolution Provisions.**

**A. Jury Trial Waiver.** TO THE EXTENT PERMITTED BY LAW, YOU AND WE WAIVE ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF A LAWSUIT ARISING OUT OF OR RELATED TO THIS AGREEMENT. THIS JURY TRIAL WAIVER SHALL NOT AFFECT THE ARBITRATION PROVISION BELOW (INCLUDING THE JURY TRIAL WAIVER CONTAINED THEREIN). YOU AND WE EACH REPRESENT THAT THIS WAIVER IS GIVEN KNOWINGLY, WILLINGLY AND VOLUNTARILY.

**B. Notice and Cure.** Prior to bringing a lawsuit or initiating an arbitration that asserts a claim arising out of or related to this Agreement (as further defined below, a "Claim"), the party asserting the Claim (the "Claimant") shall give the other party (the "Defendant") written notice of the Claim (a "Claim Notice") and a reasonable opportunity, not less than 30 days, to resolve the Claim. Any Claim Notice to you shall be sent in writing to the address we have in our records (or any updated address you subsequently provide to us). Any Claim Notice to us shall be sent by mail to World Financial Network Bank, PO Box 182436, Columbus, OH 43218-2436 (or any updated address we subsequently provide). Any Claim Notice you send must provide your name, address and account number. Any Claim Notice must explain the nature of the Claim and the relief that is demanded. You may only submit a Claim Notice on your own behalf and not on behalf of any other party. No third party, other than a lawyer you have personally retained, may submit a Claim Notice on your behalf. The Claimant must reasonably cooperate in providing any information about the Claim that the other party reasonably requests.

**C. Arbitration Provision.** READ THIS ARBITRATION PROVISION CAREFULLY. IF YOU DO NOT REJECT THIS ARBITRATION PROVISION IN ACCORDANCE WITH PARAGRAPH 30.C.1. BELOW, IT WILL BE PART OF THIS AGREEMENT AND WILL HAVE A SUBSTANTIAL IMPACT ON THE WAY YOU OR WE WILL RESOLVE ANY CLAIM WHICH YOU OR WE HAVE AGAINST EACH OTHER NOW OR IN THE FUTURE.

**1. Your Right to Reject:** If you don't want this Arbitration Provision (and any prior arbitration agreement between you and us ("Prior Arbitration Agreement")) to apply, you may reject it by mailing us a written rejection notice which gives the name of each Cardholder and contains a statement that you (both of you, if more than one) reject the Arbitration Provision of this Agreement. The rejection notice must be sent to us at World Financial Network Bank, PO Box 182422, Columbus, OH 43218-2422. A rejection notice is only effective if it is signed by you (all of you, if more than one) and

if we receive it within thirty (30) calendar days after the date we first provide you with a credit card agreement or written notice providing you a right to reject this Arbitration Provision. Your rejection of this Arbitration Provision will not affect any other provision of this Agreement or your ability to obtain credit.

**2. Parties Subject to Arbitration:** Solely as used in this Arbitration Provision (and not elsewhere in this Agreement), the terms "we," "us" and "our" mean (a) World Financial Network Bank, any parent, subsidiary or affiliate of the Bank and the employees, officers and directors of such companies (the "Bank Parties"); and (b) any other person or company that provides any services in connection with this Agreement if you assert a Claim against such other person or company at the same time you assert a Claim against any Bank Party.

**3. Covered Claims:** "Claim" means any claim, dispute or controversy between you and us that in any way arises from or relates to this Agreement, the Account, the issuance of any Card, any rewards program, any prior agreement or account. "Claim" includes disputes arising from actions or omissions prior to the date any Card was issued to you, including the advertising related to, application for or approval of the Account. "Claim" has the broadest possible meaning, and includes initial claims, counterclaims, cross-claims and third-party claims. It includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief). It also includes disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Agreement. However, notwithstanding any language in this Arbitration Provision to the contrary, "Claim" does not include any dispute about the validity, effect or enforceability of the prohibitions against class proceedings, private attorney general proceedings and/or multiple-party proceedings described in Paragraph 30.C.7. (the "Class Action Waiver") or any dispute concerning the last sentence of Paragraph 30.C.13.; any such dispute shall be resolved by a court and not by an arbitrator or Administrator.

**4. Starting an Arbitration:** Arbitration may be elected by any party with respect to any Claim, even if that party has already initiated a lawsuit with respect to a different Claim. Arbitration is started by giving a written demand for arbitration to the other party. We will not demand to arbitrate an individual Claim that you bring against us in small claims court or your state's equivalent court, if any. But if that Claim is transferred, removed or appealed to a different court, we then have the right to demand arbitration.

**5. Choosing the Administrator:** "Administrator" means the American Arbitration Association ("AAA"), 1633 Broadway, 10th Floor, New York, NY 10019, www.adr.org; JAMS is at 620 Eighth Avenue, 34th Floor, New York, NY 10018, www.jamsadr.com; or any other company selected by mutual agreement of the parties. If both AAA and JAMS cannot or will not serve and the parties are unable to select an Administrator by mutual consent, the Administrator will be selected by a court. The arbitrator will be appointed by the Administrator in accordance with the rules of the Administrator. However, the arbitrator must be a retired or former judge or a lawyer with at least 10 years of experience. You get to select the Administrator if you give us written notice of your selection with your notice that you are electing to arbitrate any Claim or within 20 days after we give you notice that we are electing to arbitrate any Claim (or, if you dispute our right to require arbitration of the Claim, within 20 days after that

dispute is finally resolved). If you do not select the Administrator on time, we may do it. Notwithstanding any language in this Arbitration Provision to the contrary, no arbitration may be administered, without the consent of all parties to the arbitration, by any Administrator that has in place a formal or informal policy that is inconsistent with the Class Action Waiver.

**6. Court and Jury Trials Prohibited; Other Limitations on Legal Rights: IF YOU OR WE ELECT TO ARBITRATE A CLAIM, YOU WILL NOT HAVE THE RIGHT TO PURSUE THAT CLAIM IN COURT OR HAVE A JURY DECIDE THE CLAIM. ALSO, YOUR ABILITY TO OBTAIN INFORMATION FROM US IS MORE LIMITED IN AN ARBITRATION THAN IN A LAWSUIT. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.**

**7. Prohibition Against Certain Proceedings: IF YOU OR WE ELECT TO ARBITRATE A CLAIM: (1) NEITHER YOU NOR WE MAY PARTICIPATE IN A CLASS ACTION IN COURT OR IN CLASS-WIDE ARBITRATION, EITHER AS A PLAINTIFF, DEFENDANT OR CLASS MEMBER; (2) NEITHER YOU NOR WE MAY ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION; (3) CLAIMS BROUGHT BY OR AGAINST YOU MAY NOT BE JOINED OR CONSOLIDATED WITH CLAIMS BROUGHT BY OR AGAINST ANY OTHER PERSON; AND (4) THE ARBITRATOR SHALL HAVE NO POWER OR AUTHORITY TO CONDUCT A CLASS-WIDE ARBITRATION, PRIVATE ATTORNEY GENERAL ARBITRATION OR MULTIPLE-PARTY ARBITRATION.**

**8. Location and Costs of Arbitration:** Any arbitration hearing that you attend must take place at a location reasonably convenient to you. We will pay any and all fees of the Administrator and/or the arbitrator if applicable law requires us to, if you prevail in the arbitration or if we must bear such fees in order for this Arbitration Provision to be enforced. If you demand an arbitration, we will pay your reasonable attorneys' and experts' fees if you prevail or if we must bear such fees in order for this Arbitration Provision to be enforced. Also, we will bear any fees if applicable law requires us to.

**9. Governing Law:** This Arbitration Provision involves interstate commerce and is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), and not by any state arbitration law. The arbitrator must apply applicable substantive law consistent with the FAA and applicable statutes of limitations and claims of privilege recognized at law. The arbitrator may award any remedy provided by the substantive law that would apply if the action were pending in court (including, without limitation, punitive damages, which shall be governed by the Constitutional standards employed by the courts). At the timely request of either party, the arbitrator must provide a brief written explanation of the basis for the award.

**10. Right to Discovery:** In addition to the parties' rights to obtain discovery pursuant to the arbitration rules of the Administrator, either party may submit a written request to the arbitrator to expand the scope of discovery normally allowable under the arbitration rules of the Administrator. The arbitrator shall have discretion to grant or deny that request.

**11. Arbitration Result and Right of Appeal:** Judgment upon the arbitrator's award may be entered by any court having jurisdiction. The arbitrator's decision is final and binding, except for any right of appeal provided by the FAA. However, if the amount of the Claim exceeds $50,000 or involves a request for injunctive or declaratory relief that

could foreseeably involve a cost or benefit to either party exceeding $50,000, any party can, within 30 days after the entry of the award by the arbitrator, appeal the award to a three-arbitrator panel administered by the Administrator. The panel shall reconsider anew any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. Reference in this Arbitration Provision to "the arbitrator" shall mean the panel if an appeal of the arbitrator's decision has been taken. The costs of such an appeal will be borne in accordance with Paragraph 30.C.8. above.

**12. Rules of Interpretation:** This Arbitration Provision shall survive the repayment of all amounts owed under this Agreement, the closing of the Account, any legal proceeding and any bankruptcy to the extent consistent with applicable bankruptcy law. In the event of a conflict or inconsistency between this Arbitration Provision, on the one hand, and the applicable arbitration rules or the other provisions of this Agreement, on the other hand, this Arbitration Provision shall govern. This Arbitration Provision replaces any Prior Arbitration Agreement.

**13. Severability:** If any portion of this Arbitration Provision, other than the Class Action Waiver, is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force. If a determination is made that the Class Action Waiver is unenforceable, only this sentence of the Arbitration Agreement will remain in force and the remaining provisions shall be null and void, provided that the determination concerning the Class Action Waiver shall be subject to appeal.

**14. Special Payment:** If (1) you submit a Claim Notice in accordance with Paragraph 30.B. on your own behalf (and not on behalf of any other party); (2) we refuse to provide you with the relief you request; and (3) an arbitrator subsequently determines that you were entitled to such relief (or greater relief), the arbitrator shall award you at least $5,100 (plus any fees and costs to which you are entitled).

**31. Customer Service.** For customer service, you can call toll-free: 1-888-428-8810 (TDD/TTY 1-800-695-1788).

**32. Using Your Credit Card Account.** Your Account may be used to make purchases from any of the following: J.Crew and such other retailers as we may determine from time to time by notifying you via electronic mail, statement message, posting on a website or such other method as we may determine. We reserve the right not to honor particular transactions, which may include, without limitation, transactions related to gambling, ATM usage at casinos (if applicable through this program), and illegal activities.

Notice(s):

**For Wisconsin Residents:**

If you are married, please contact us immediately upon receipt of this Agreement at 1-888-428-8810 (TDD/TTY 1-800-695-1788) and provide us with the name and address of your spouse. We are required to inform your spouse that we have opened a credit account for you.

**For Bankruptcy Notifications:**

All bankruptcy notices and related correspondence to WFNNB should be sent to the following address: WFNNB, Bankruptcy Department, PO Box 182125 Columbus, OH 43218-2125.

*******************************

**Your Billing Rights; Keep This Notice For Future Use**

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case of Errors or Questions About Your Bill.** If you think your bill (Statement) is wrong, or if you need more information

about a transaction on your bill, write to us on a separate sheet at World Financial Network Bank PO Box 182782, Columbus, OH 43218-2782. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and Account Number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

**Your Rights and Our Responsibilities After We Receive Your Written Notice.** We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct. After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including Finance Charges and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. If we find that we made a mistake on your bill, you will not have to pay any Finance Charges related to any questioned amount. If we didn't make a mistake, you may have to pay Finance Charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you, and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50.00 of the questioned amount, even if your bill was correct.

**Special Rule For Credit Card Purchases.** If you have a problem with the quality of property or services that you purchased with a credit card and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

**A.** You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

**B.** The purchase price must have been more than $50.00.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

WORLD FINANCIAL NETWORK BANK
Wilmington, DE

**JC-APCCA-0811W**

**Important Information Regarding Payments**

You can also make your payments at any J.Crew store, online at www.mycardcare.com/jcrew or you can call us toll free at 1-888-428-8810 (TDD/TTY 1-800-695-1788) to make a payment by telephone (a fee may be charged for processing a telephone or internet payment). You can also overnight your payment to us at the following address: 13526 Nacogdoches Rd., San Antonio, TX 78217-1274. You may make a payment to your account at any J.Crew store using a personal check, traveler's check, debit card or cash. Cash is only accepted within J.Crew stores. **We do not accept gift cards or credit cards as payment on the J.Crew Credit Card account.**

**Rewards Program Guidelines and Restrictions**

The J.Crew Rewards Program is provided by J.Crew which is responsible for the Program operation. J.Crew may change the terms of this Program at any time.

All J.Crew cardholders who have made eligible purchases totaling net $1+ on their J.Crew Credit Card within the last 12 months and whose accounts are in good standing are considered members of the J.Crew Rewards Program. All eligible purchases will be tracked by J.Crew and its transaction services provider, using a valuation of 1 point per $1 spent. Eligible purchases include all merchandise purchases made with the J.Crew Credit Card in J.Crew stores, through the J.Crew catalog, at jcrew.com and at our factory outlet stores. Purchases made with an electronic stored value card are not eligible and will not earn points towards a reward. Points will not be awarded on tax charges or on any charges associated with shipping, alterations, monogramming or gift wrapping. Points are awarded within 96 hours of each eligible transaction made with the J.Crew Credit Card. Reward points will expire 12 months from the date of issuance. Customers who have an open J.Crew Credit Card account in good standing and with at least 500 points (net of any deductions from merchandise returns or prior rewards card distributions) will receive a rewards card at the next rewards distribution period as determined by J.Crew.

Each J.Crew Credit Card account number will accumulate its own rewards points. These points cannot be combined or used in conjunction with any other rewards points. J.Crew Credit Card purchases and the J.Crew Rewards Program rewards cards are nontransferable to those not designated as authorized users of the J.Crew Credit Card account on the date of the reward grant. Balances from purchases made with the rewards card must be paid with the J.Crew Credit Card, subject to credit approval.

Rewards cards earned for merchandise purchases become void if such merchandise is returned. Voided reward cards must be surrendered to J.Crew upon request. If rewards cards are not surrendered, J.Crew reserves the right to adjust your account (including debiting your account) in the amount of the rewards card(s). J.Crew may refuse merchandise returns without the associated rewards card. J.Crew Credit Cards held by J.Crew employees are not eligible for the J.Crew Rewards Program rewards or benefits. Please visit jcrew.com for current terms and conditions. The J.Crew rewards card has no cash value and is not a coupon for a discount or a markdown on merchandise. Rewards cards can only be used for future purchases and cannot be applied to current account balances.

rev. 08/11

| FACTS | WHAT DOES WORLD FINANCIAL NETWORK BANK (WFNNB) DO WITH YOUR PERSONAL INFORMATION? |
|---|---|

| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
|---|---|

| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social Security number and income<br>• Account balances and payment history<br>• Credit history and credit scores |
|---|---|

| How? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons WFNNB chooses to share; and whether you can limit this sharing. |
|---|---|

| Reasons we can share your personal information | Does WFNNB share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes—** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes—**to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes-**information about your transactions and experiences | Yes | Yes |
| **For our affiliates' everyday business purposes-**information about your creditworthiness | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For nonaffiliates to market to you** | Yes | Yes |

| To limit our sharing | Call 1-800-220-1181 (TDD/TTY 1-800-695-1788) — our menu will prompt you through your choice(s).<br>**Please note:**<br>If you are a *new* customer, we can begin sharing your information 30 days from the date we sent this notice. When you are *no longer* our customer, we continue to share your information as described in this notice.<br>However, you can contact us at any time to limit our sharing. |
|---|---|

| Questions? | Go to mycardcare.com/privacy or call 1-866-423-1097 |
|---|---|

**Page 2**

## Who we are

| Who is providing this notice? | WFNNB |
|---|---|

## What we do

| How does WFNNB protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
|---|---|
| How does WFNNB collect my personal information? | We collect your personal information, for example, when you<br>• open an account or provide account information<br>• give us your income information<br>• use your credit or show your driver's license<br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| Why can't I limit all sharing? | Federal law gives you the right to limit only<br>• sharing for affiliates' everyday business purposes—information about your creditworthiness<br>• affiliates from using your information to market to you<br>• sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |
| What happens when I limit sharing for an account I hold jointly with someone else? | Your choices will apply to everyone on your account. |

## Definitions

| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>• Our affiliates include companies with a World Financial name; financial companies such as World Financial Capital Bank and other World Financial entities; nonfinancial companies such as Epsilon, LoyaltyOne, Alliance Data. |
|---|---|
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>• Nonaffiliates we share with can include financial service providers, retailers, direct marketers, publishers and nonprofit organizations. |
| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>• Our joint marketing partners include lenders and insurance companies. |

## Other important information

We also will comply with more restrictive state laws to the extent that they apply.  For example, if your billing address is in Vermont or California, we will automatically opt you out of sharing your information with nonaffiliates for marketing purposes.

# Exhibit B

# J.CREW

10 Columbus Circle
Spaces 202 & 302
New York, NY  10023
(212) 823-9302

STORE: 00700      REGISTER: 002
CASHIER: KATHERINEZ
ASSOCIATE: 00000230163

CUSTOMER RECEIPT COPY

TWISTED PEARL HAMMOCK NEC, EC7253, ONE S
099101918130                    54.88
   98.00 - 29.40
   All FP Jewelry Now 30% off
   68.60 - 13.72
   Promotion: 20% Off PS Discountåå

SUBTOTAL                        54.88
SALES TAX                        4.87
TOTAL                           59.75

      ***  YOU SAVED 43.12   ***

AMOUNT TENDERED
J Crew Card                     59.75
   ACCT: ************7528
   EXP: ******
   APPROVAL: 001768

TOTAL PAYMENT                   59.75

SALES TAX ANALYSIS

| AGENCY | RATE% | TAXABLE | TAX |
|--------|-------|---------|-----|
| NEW YORK | | | |
| ST | 4.00000 | 54.88 | 2.19 |
| CTY | 4.50000 | 54.88 | 2.47 |
| DIST | 0.37500 | 54.88 | 0.21 |

Trans: 37961         12/14/2011 3:50 PM

      J Crew accepts returns of unworn,
      unwashed, undamaged or defective
      merchandise for full refund or
   exchange within 30 days of original
      purchase. Original receipt must
   accompany merchandise purchased by
         cash or check. Requests to
   exchange merchandise received as a
   gift must be accompanied by a gift
      receipt. See store location or
   www.jcrew.com for full return policy.

      Thank you for shopping at J. Crew

```
All FP Jewelry Now 30% off
68.60 - 13.72
Promotion: 20% Off PS Discount
```

```
==========================================
SUBTOTAL                        54.88
SALES TAX                        4.87
TOTAL                           59.75
==========================================
        ***   YOU SAVED 43.12   ***
==========================================
AMOUNT TENDERED
J Crew Card                     59.75
  ACCT: ***********7528
  EXP: ******
  APPROVAL: 001768

TOTAL PAYMENT                   59.75

SALES TAX ANALYSIS

AGENCY      RATE%   TAXABLE     TAX
NEW YORK
ST         4.00000   54.88     2.19
CTY        4.50000   54.88     2.47
DIST       0.37500   54.88     0.21
------------------------------------------
Trans: 37961        12/14/2011 3:50 PM
```

J.Crew accepts returns of unworn,
unwashed, undamaged or defective
merchandise for full refund or
exchange within 30 days of original
purchase. Original receipt must
accompany merchandise purchased by
cash or check. Requests to
exchange merchandise received as a
gift must be accompanied by a gift
receipt. See store location or
www.jcrew.com for full return policy.

Thank you for shopping at J. Crew

```
0379610070000212142011
```

# Exhibit C

you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases**

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services.

There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state within 100 miles of your current mailing address; and

(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

**G–3(A)—Long-Form Billing-Error Rights Model Form (Plans Other Than Home-Equity Plans)**

*Your Billing Rights: Keep This Document For Future Use*

This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.

*What To Do If You Find A Mistake On Your Statement*

If you think there is an error on your statement, write to us at:

[Creditor Name]

[Creditor Address]

[You may also contact us on the Web: [Creditor Web or email address]]

In your letter, give us the following information:

• *Account information:* Your name and account number.

• *Dollar amount:* The dollar amount of the suspected error.

• *Description of problem:* If you think there is an error on your bill, describe what

you believe is wrong and why you believe it is a mistake.

You must contact us:

• Within 60 days after the error appeared on your statement.

• At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors *in writing* [or electronically]. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

*What Will Happen After We Receive Your Letter*

When we receive your letter, we must do two things:

1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.

2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct. While we investigate whether or not there has been an error:

• We cannot try to collect the amount in question, or report you as delinquent on that amount.

• The charge in question may remain on your statement, and we may continue to charge you interest on that amount.

• While you do not have to pay the amount in question, you are responsible for the remainder of your balance.

• We can apply any unpaid amount against your credit limit.

After we finish our investigation, one of two things will happen:

• *If we made a mistake:* You will not have to pay the amount in question or any interest or other fees related to that amount.

• *If we do not believe there was a mistake:* You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within *10 days* telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

*Your Rights If You Are Dissatisfied With Your Credit Card Purchases*

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:

1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)

2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.

3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us *in writing* [or electronically] at:

[Creditor Name]

[Creditor Address]

[[Creditor Web or e-mail address]]

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

**G–4—Alternative Billing-Error Rights Model Form (Home-Equity Plans)**

BILLING RIGHTS SUMMARY

*In Case of Errors or Questions About Your Bill*

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us [on a separate sheet] at [address] [the address shown on your bill] as soon as possible. [You may also contact us on the Web: [Creditor Web or e-mail address]] We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

• Your name and account number.

• The dollar amount of the suspected error.

• Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

*Special Rule for Credit Card Purchases*

If you have a problem with the quality of goods or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services. You have this protection only when the purchase price was more than $50 and the purchase was made in your home state or within 100 miles of your mailing address. (If we own or operate the merchant, or if we mailed you the advertisement for the property or services, all purchases are covered regardless of amount or location of purchase.)